## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ALEXANDER BEDON, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>PEPPERIDGE FARM, INC.,<br><br>          Defendant. | Case No.: 19-cv-06949<br><br>Hon. Sara L. Ellis<br>*Judge Presiding*<br><br>Hon. Jeffrey Cummings<br>*Magistrate Judge* |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiff Alexander Bedon ("Bedon" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys Siegel & Dolan Ltd, complains against Defendant Pepperidge Farm, Inc. ("PFI" or "Defendant") as follows:

### NATURE OF THE ACTION

1.      This is a class action under the Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14/l, *et seq.* ("BIPA") on behalf of all persons in Illinois who had their biometric identifiers and biometric information improperly collected, captured, received, or otherwise obtained by Defendant.

2.      This is a class action under the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, et seq. ("IMWL"), and a collective action arising under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), for Defendant's failure to pay Plaintiff and its other hourly employees who worked at its Downers Grove, Illinois facility for all hours worked, including overtime wages.

## PARTIES

3. Plaintiff Bedon is an adult resident of Naperville, Illinois and worked as an hourly employee for Defendant at its facility in Downers Grove, Illinois.

4. Approximately 200-300 individuals perform work for Defendant in the State of Illinois.

5. Defendant collects biometric identifiers and biometric information from its employees through its employee identification/authentication system. Plaintiff and these individuals are referred to herein as the "putative BIPA Class" members.

6. Within the prior five years, Plaintiff was employed by the Defendant and had his biometric information collected by Defendant's biometric scanners. *Robertson v. Hostmark Hospitality Group, Inc.*, Case No. 2018-CH-5194, Mem. Op. & Order at 3-6 (Cook Cnty. Ill. Cir. Ct. July 31, 2019); *Chavez v. Temperature Equipment Corp.,* Case No. 2019-CH-2538, Mem. Op. & Order at 6-11 (Cook Cnty. Ill. Cir. Ct. Sept. 11, 2019) (holding that a five year statute of limitations applies to BIPA claims).

7. Plaintiff and Defendant's other current and former hourly employees were not paid for all time worked, including time spent donning and doffing required safety equipment and work clothes. As a result, Plaintiff and Defendant's other current and former hourly employees are not paid overtime as required by the IMWL and FLSA for all hours worked in excess of forty (40) hours in individual workweeks. Plaintiff and Defendant's other current and former hourly employees are referred to herein as the "putative Overtime Class" members.

8. Within the prior three years, Plaintiff was employed by Defendant as an "employee" as defined by the IMWL, 820 Ill. Comp. Stat. 105/3(d), and the FLSA, 29 U.S.C. § 203(e)(1).

9.      During the course of his employment, Plaintiff handled goods that moved in interstate commerce and he was not exempt from the maximum hours provisions of the IMWL, 820 Ill. Comp. Stat. 105/4a, or the FLSA, 29 U.S.C. § 207.

10.     Defendant PFI is a commercial bakery with its headquarters in Connecticut and manufacturing plants in Illinois and Pennsylvania. PFI conducts substantial business operations throughout the state of Illinois.

11.     Defendant is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

## JURISDICTION AND VENUE

12.     This Court has jurisdiction of this action under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

13.     The unlawful employment practices described herein were committed at Defendant's facility in Downers Grove, Illinois, in this judicial district. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

14.     Plaintiff began working for PFI in July 2014 and was an employee of Defendant until July 23, 2019. Bedon's final position with PFI was Ingredient Control at its Downers Grove, Illinois processing plant.

15.     Bedon's hourly rate at the time he was hired in July 2014 was $16.00 per hour. His hourly rate at the time he was terminated on July 23, 2019 was $25.90 per hour.

16.     PFI typically scheduled Bedon, and its other hourly employees to work at least forty (40) hours per week, which included a thirty (30) minute unpaid meal period per day.

17.     It was common for Bedon and other hourly employees to work more than forty (40) hours per week, especially during busy seasons.

18.     For example, from the week of December 30, 2018 through the week of May 12, 2019, Bedon worked more than forty (40) hours per week in fifteen (15) out of the nineteen (19) weeks.

**PFI's Collection and Use of Employee's Biometric Information**

19.     When employees first begin their jobs at PFI, they are required to scan their handprints and fingerprints in its biometric tracking system as a means of employee identification and authentication, instead of using only key fobs or other identification cards.

20.     During the orientation process at the outset of Bedon's employment with PFI in July 2014, he was required to have his handprints and fingerprints collected and/or captured so that PFI could store it and use it as an authentication method going forward. PFI subsequently stored Bedon's handprint and fingerprint data in its databases. The biometric scanner was already in place and being used at the time of Bedon's hiring.

21.     For a biometric scanner to serve its intended function of authenticating the identity of a particular user, it must re-collect biometric information each time that individual scans his or her hand, and compare it to biometric information stored for that particular individual in its databases.

22.     PFI required Bedon, as an employee, to enter part of his social security number and to use the biometric scanner to enter the employee work area at Defendant's facility.

23. PFI required Bedon to use a hand scanner each time he began his workday.

24. Each time Bedon used Defendant's hand scanner, his biometric information was re-collected, for purposes of matching it to his biometric information saved in Defendant's databases.

25. PFI never informed Bedon of the specific limited purposes or length of time for which it collected, stored, or used his biometric identifiers and biometric information.

26. Similarly, PFI never informed Bedon of any biometric data retention policy that Defendant developed, nor whether Defendant will ever permanently delete his biometric information.

27. Defendant failed to provide Bedon, or any member of the putative BIPA Class, with written notice of the fact that they were collecting biometric information prior to collection.

28. Defendant failed to maintain or publicize information about its biometric practices or policies; and failed to provide Plaintiff, or any member of the putative BIPA Class, with information about their policies or practices.

29. Bedon was not provided with, nor did he ever sign a written release allowing PFI to collect or store his biometric information.

30. Bedon's experiences as described above are typical and representative of the experiences of the putative BIPA Class.

31. Bedon and the putative BIPA Class have continuously and repeatedly been exposed to risks, harmful conditions, and violations of privacy through PFI's violations of BIPA as described herein.

**PFI does not Pay Employees for their Pre-Shift and Post-Shift Work**

32.     PFI has a dress code policy for its hourly production employees at the Downers Grove facility. Specifically, Bedon and the other members of the putative Overtime Class are required to wear a company-issued uniform, safety shoes, a smock (production employees only), a hairnet, and earplugs (collectively "work clothes and safety equipment").

33.     PFI requires employees to wear the work clothes and safety equipment in order to comply with Defendant's Good Manufacturing Practices.

34.     PFI prohibits employees from bringing their work clothes and safety equipment home. Rather, Bedon and the other members of the putative Overtime Class must don and doff their work clothes and safety equipment in the employee locker room at Defendant's facility.

35.     Bedon and the other members of the Overtime Class are required to be ready for work at the start of their shift. Specifically, PFI's attendance policy states that "[p]unch-ins at an associate's scheduled start time will count as a Late In, since associates are required to be at their assigned workstation by their scheduled start time." As such, Bedon and the other members of the putative Overtime Class must arrive prior to the start of their scheduled shift in order to don their work clothes and safety equipment.

36.     It typically takes Bedon and the other members of the Overtime Class approximately five (5) minutes to don their work clothes and safety equipment.

37.     After donning their work clothes and safety equipment, Bedon and the other members of the putative Overtime Class walk from the employee locker room to the manufacturing floor and/or shipping department (collectively "workstation"), whereupon they clock in and begin their shift.

38.     It typically takes Bedon and the other members of the putative Overtime Class approximately three (3) minutes to walk from the employee locker room to their workstation before their shift.

39.     In total, it would take Bedon and the other members of the putative Overtime Class approximately eight (8) minutes to complete their pre-shift activities.

40.     Although the above-described pre-shift activities are an integral and indispensable part of the principal work activities for which Bedon and the other members of the putative Overtime Class are employed, PFI does not compensate Bedon and the other members of the putative Overtime Class for said time.

41.     Bedon and the other members of the putative Overtime Class are required by PFI to stay at work until the end of their shift.

42.     At the end of their shift, Bedon and the other members of the putative Overtime Class would punch out and then walk from their workstation to the employee locker room, whereupon they would doff their required work clothes and safety equipment.

43.     It typically takes Bedon and the other members of the putative Overtime Class approximately three (3) minutes to walk from their workstation to the employee locker room at the end of their shift.

44.     It typically takes Bedon and the other members of the putative Overtime Class approximately five (5) minutes to doff their work clothes and safety equipment.

45.     In total, it would take Bedon and the other members of the putative Overtime Class approximately eight (8) minutes to complete their post-shift activities.

46.     Although the above-described post-shift activities are an integral and indispensable part of the principal work activities for which Bedon and the other members of the

7

putative Overtime Class are employed, PFI does not compensate Bedon and the other members
of the putative Overtime Class for said time.

47.     Thus, PFI failed to compensate Bedon and the other members of the putative
Overtime Class at a rate of one and one-half times their regular hourly rate of pay (the "overtime
rate") for all time worked in excess of forty (40) hours in individual workweeks.

## BIPA CLASS ALLEGATIONS

48.     The practices, policies, and consequences pertinent to PFI's biometric system as
described above apply to each BIPA Class member.

49.     Defendant employs approximately 200-300 individuals in Illinois who are
similarly situated persons and potential BIPA Class members.

50.     Plaintiff brings this action pursuant to Fed. R. Civ. P 23 on behalf of Plaintiff and
the putative BIPA Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their biometric information collected,
> captured, received, otherwise obtained, used, distributed, or stored by PFI in the
> State of Illinois.

51.     This action on behalf of the Rule 23 class satisfies the requirements of Fed. R.
Civ. P. 23(a), as alleged in the following particulars:

a)  The exact number of putative BIPA Class members is unknown to Plaintiff at this
    time, but it is clear that individual joinder is impracticable. Defendant has
    collected, captured, received, or otherwise obtained biometric identifiers or
    biometric information from at least hundreds of employees who fall into the
    definition of the putative BIPA Class. Ultimately, the putative BIPA Class
    members will be easily identified through Defendant's records.

b) There are questions of law and/or fact common to the claims of Plaintiff and the putative BIPA Class, including: (i) whether Defendant collected, captured, or otherwise obtained Plaintiff's and the putative BIPA Class's biometric identifiers or biometric information; (ii) whether Defendant properly informed Plaintiff and the putative BIPA Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information; (iii) whether Defendant obtained a written release (as defined in 740 Ill. Comp. Stat. 14/10) to collect, use, and store Plaintiff's and the putative BIPA Class's biometric identifiers or biometric information; (iv) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the putative BIPA Class's biometric identifiers or biometric information; (v) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first; (vi) whether Defendant complies with any such written policy (if one exists); (vii) whether Defendant used Plaintiff's and the putative BIPA Class's fingerprints to identify them; and (viii) whether Defendant's violations of the BIPA were committed negligently or recklessly.

c) The claims of Plaintiff are typical of the claims of the proposed class and he has the same interests as the other members of the class; and

d) Plaintiff will fairly and adequately represent and protect the interests of the putative BIPA Class and has retained counsel competent and experienced in

complex litigation and class actions.

52.     In addition, this action satisfies the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members is impractical. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. The damages suffered by the individual members of the putative BIPA Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the putative BIPA Class to obtain effective relief from Defendant's misconduct. Even if members of the putative BIPA Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. There will be no difficulty in the management of this action as a class action.

**OVERTIME CLASS/COLLECTIVE ALLEGATIONS**

53.     The practices, policies, and consequences pertinent to PFI's failure to pay for all pre-shift and post-shift work as described above apply to each Overtime Class member.

54.     Defendant employs approximately 200-300 individuals in Illinois who are similarly situated persons and potential Overtime Class members.

55.     Plaintiff brings this action individually and as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals who worked at Defendant's Downers Grove, Illinois facility as hourly employees at any time between three years prior to the filing of this lawsuit and the entry of judgment in this case, who may choose to "opt-in" to join this lawsuit.

56.     Plaintiff brings this action pursuant to Fed. R. Civ. P 23 on behalf of Plaintiff and the putative Overtime Class of similarly situated individuals, defined as follows:

> All individuals who worked at Defendant's Downers Grove, Illinois facility as hourly employees at any time between three years prior to the filing of this lawsuit and the entry of judgment in this case.

57.     This action on behalf of the Rule 23 class satisfies the requirements of Fed. R. Civ. P. 23(a), as alleged in the following particulars:

a)  The exact number of putative Overtime Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has employed hundreds of individuals at its Downers Grove, Illinois facility who fall into the definition of the putative Overtime Class. Ultimately, the putative Overtime Class members will be easily identified through Defendant's records.

b)  There are questions of law and/or fact common to the claims of Plaintiff and the putative Overtime Class, including: (i) whether Defendant requires Plaintiff and putative Overtime Class members to perform pre-shift and post-shift work, including donning and doffing their work clothes and safety equipment; (ii) the reasonable amount of time it takes Plaintiffs and putative Overtime Class members to perform any such pre-shift and post-shift work; and (ii) whether Defendant must compensate Plaintiff and putative Overtime Class members for

performing any such pre-shift and post-shift work.

    c)  The claims of Plaintiff are typical of the claims of the proposed class and he has the same interests as the other members of the class; and

    d)  Plaintiff will fairly and adequately represent and protect the interests of the putative Overtime Class and has retained counsel competent and experienced in complex litigation and class actions.

58.    In addition, this action satisfies the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members is impractical. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. The damages suffered by the individual members of the putative Overtime Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the putative Overtime Class to obtain effective relief from Defendant's misconduct. Even if members of the putative Overtime Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. There will be no difficulty in the management of this action as a class action.

## COUNT I – BIOMETRIC INFORMATION PRIVACY ACT
### (Class Action)

59.     Plaintiff restates and incorporates paragraphs 1-49 as though fully set forth herein.

60.     The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 Ill. Comp. Stat. 14/15(b) (emphasis added).

61.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 Ill. Comp. Stat. 14/10.

62.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 Ill. Comp. Stat. 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

63.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 Ill. Comp. Stat. 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting

13

such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 Ill. Comp. Stat. 14/15(a).

64.    Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

65.    The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 Ill. Comp. Stat. 14/15(a).

66.    PFI fails to comply with these BIPA mandates.

67.    PFI is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

68.    Plaintiff and the putative BIPA Class are individuals who had their "biometric identifiers" collected by PFI (in the form of their handprints and fingerprints). *See* 740 Ill. Comp. Stat. 14/10.

69.    Plaintiff and the putative BIPA Class's biometric identifiers or information based on those biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

70.     PFI violated 740 Ill. Comp. Stat. 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

71.     PFI violated 740 Ill. Comp. Stat. 14/15(b)(1) by failing to inform Plaintiff and the putative BIPA Class in writing that their biometric identifiers and biometric information were being collected and stored.

72.     PFI violated 740 Ill. Comp. Stat. 14/15(b)(2) by failing to inform Plaintiff and the putative BIPA Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

73.     PFI violated 740 Ill. Comp. Stat. 14/15(b)(3) by failing to obtain written releases from Plaintiff and the putative BIPA Class before it collected, used, and stored their biometric identifiers and biometric information.

74.     By collecting, storing, and using Plaintiff's and the putative BIPA Class's biometric identifiers and biometric information as described herein, PFI violated Plaintiff's and the putative BIPA Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 Ill. Comp. Stat. 14/1, *et seq.*; *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, 2019 WL 323902 (Ill. Jan. 25, 2019).

75.     For each of the violations identified above, Plaintiff and the members of the putative BIPA Class are entitled to recover anywhere from $1,000 to $5,000 in statutory damages.

WHEREFORE, Plaintiff Alexander Bedon, individually and on behalf of other similarly situated individuals, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant Pepperidge Farms, Inc. and grant him the following relief:

A.  Certifying this case as a class action on behalf of the putative BIPA Class defined above, appointing Plaintiff as representative of the putative BIPA Class, and appointing his counsel as Class Counsel;

B.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the putative BIPA Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

C.  Awarding statutory damages to each person whose rights were violated under the BIPA, pursuant to 740 Ill. Comp. Stat. 14/20;

D.  Awarding Plaintiff and the putative BIPA Class their reasonable litigation expenses and attorneys' fees;

E.  Awarding Plaintiff and the putative BIPA Class pre- and post-judgment interest, to the extent allowable; and

F.  Awarding such other and further relief as equity and justice may require.

## COUNT II – FAIR LABOR STANDARDS ACT
### (Collective Action)

76.  Plaintiff incorporates Paragraphs 1-44 and 50-55 as though fully set forth herein.

77.  This Count arises from Defendant's violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for Defendant's failure to pay Plaintiff and all others similarly situated at the overtime rate for all hours worked in excess of forty (40) per workweek.

78.  Pursuant to 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who

has been damaged by a defendant's failure to comply with 29 U.S.C. §§ 206 – 207. Plaintiff attaches as Exhibit A his Notice of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

79.     Defendant applied its compensation policies, which violate the FLSA, on a company-wide basis, including towards Plaintiffs and the Overtime Class.

80.     Plaintiff and the members of the putative Overtime Class are or were engaged in job duties and responsibilities integral and indispensable to the operation of Defendant's business, and neither Plaintiff nor the other members of the putative Overtime Class has received proper overtime compensation for all hours worked over forty (40) in one workweek.

81.     Defendant's failure to pay compensation for all time worked and, as a result, its failure to pay compensation at the overtime rate for all hours worked over forty (40) per workweek, is a willful violation of the FLSA, since Defendant's conduct shows that it either knew that its conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA.

82.     For all members of the Plaintiff Class to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to the entire putative Overtime Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

83.     The members of the putative Overtime Class who are still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

WHEREFORE, Alexander Bedon, individually and on behalf of other similarly situated individuals, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant Pepperidge Farms, Inc. and grant him the following relief:

A.      Awarding judgment for back pay equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

B.      Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

C.      Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

D.      Awarding reasonable attorneys' fees and costs incurred in filing this action;

E.      Entering an injunction precluding Defendant from violating the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; and

F.      Ordering such other and further relief as the Court deems appropriate and just.

## COUNT II – ILLINOIS MINIMUM WAGE LAW
### (Class Action)

84.      Plaintiff incorporates Paragraphs 1-44 and 50-55 as though fully set forth herein.

85.      This Count arises from Defendant's violation of the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq.*, for Defendant's failure to pay Plaintiff and the members of the putative Overtime Class at the overtime rate for all hours worked in excess of forty (40) per workweek.

86.      Plaintiff and the members of the putative Overtime Class were entitled to be compensated for all work performed, including but not limited to time spent donning and doffing required work clothes and safety equipment.

87.     Pursuant to the IMWL, for all weeks during which Plaintiff and the members of the putative Overtime Class worked in excess of forty (40) hours, they were entitled to be compensated at the overtime rate.

88.     Defendant has violated the IMWL by failing to compensate Plaintiff and the members of the putative Overtime Class at the overtime rate for all hours worked in excess of forty (40) per workweek.

89.     Plaintiff seeks certification of this lawsuit as a class action in order that his rights and those of the members of the putative Overtime Class, including all overtime and other wages due, statutory damages, prejudgment interest and any other damages due, be resolved.

90.     Plaintiff and the members of the putative Overtime Class have been equally affected by Defendant's failure to properly pay overtime wages.

91.     The members of the putative Overtime Class who are still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

WHEREFORE, Alexander Bedon, individually and on behalf of other similarly situated individuals, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant Pepperidge Farms, Inc. and grant him the following relief:

A.     Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

B.     Appointing Plaintiff as Class Representative and his Counsel as Class Counsel;

C.     Awarding judgment in an amount equal to treble all unpaid wages owed to Plaintiff and all others similarly situated pursuant to the IMWL;

D.     Awarding prejudgment interest on the unpaid wages in accordance with 815 Ill. Comp. Stat. 205/2;

E.    Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 105/12(a);

F.    Awarding reasonable attorneys' fees and costs incurred in filing this action;

G.    Entering an injunction precluding Defendant from violating the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*; and

H.    Ordering such other and further relief as this Court deems appropriate and just.

Dated: January 24, 2020

Marc J. Siegel, IARDC No. 6238100
Bradley Manewith, IARDC No. 6280535
James D. Rogers, IARDC No. 6324570
Siegel & Dolan Ltd.
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel. (312) 878-3210
Fax (312) 878-3211
msiegel@msiegellaw.com
bmanewith@msiegellaw.com
jrogers@msiegellaw.com

Respectfully submitted,

ALEXANDER BEDON, on behalf of themselves and all other similarly situated persons, known and unknown

By:/s/ Bradley Manewith
      *One of Plaintiffs' Attorneys*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I electronically filed the foregoing using the

court's CM/ECF system which will send notification of such filing to all counsel of record.


  /s/ Bradley Manewith    
  Bradley Manewith